**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GEORGE PEARSON *et al.*, | |
| Plaintiffs, | |
| v. | No. 20-cv-02888 |
| | Judge Franklin U. Valderrama |
| GOVERNOR JAY ROBERT PRITZKER, in his official capacity, and STATE OF ILLINOIS, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

COVID-19 is a novel coronavirus that has affected nearly every aspect of everyday life. From mask wearing to social distancing, it has changed the way we live and interact with each other. On March 9, 2020, in response to the on-going COVID-19 pandemic, the Governor of Illinois issued an emergency proclamation declaring that the COVID-19 pandemic constituted a disaster in Illinois. At the time, the state "had 11 confirmed cases of COVID-19, 'an additional 260 persons under investigation,' and evidence of 'community transmission in Illinois.'" *Fox Fire Tavern, LLC v. Pritzker*, 161 N.E.3d 1190, 1192 (Ill. App. Ct. 2020) (quoting Proclamation No. 2020-38, 44 Ill. Reg. 4744 (Mar. 9, 2020)).[1] As of May 29, 2020, COVID-19 had killed

---

[1]The Court may take "judicial notice of matters which are so commonly known within the community as to be indisputable among reasonable men, or which are capable of certain verification through recourse to reliable authority." *McCray v. Hermen*, 2000 WL 684197, at *2 n.1 (N.D. Ill. May 23, 2000) (quoting *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983)). "Included in these matters are 'proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue.'" *Id.* (quoting same); *see also Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012)

more than 100,000 people nationwide. *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring in denial of application for injunctive relief) (internal quotation marks and citations omitted). At that time, there was no known cure, no effective treatment, and no vaccine. *Id.*

In response to the global pandemic COVID-19 created, government officials have instituted numerous safety measures, which have restricted the movement of individuals, which in turn, have visited financial hardships on businesses.

Plaintiffs George Pearson (Pearson), Steve Balich (Balich) (collectively, Individual Plaintiffs), and plaintiffs Samantha L. Palya (Palya), Amanda Hamerman (Hamerman), Michael Judge (Judge), Jeff Carpenter (Carpenter), John Brown (Brown), and James Van Dam (Van Dam) (collectively, Business Owner Plaintiffs), bring this individual and class action against defendants Governor Jay Robert Pritzker (Governor Pritzker) and the State of Illinois (collectively, Defendants), alleging that three Executive Orders Governor Pritzker issued to address the COVID-19 pandemic violate the Taking Clause of the Fifth Amendment and Illinois Constitution. R. 9, Am. Compl.[2] Plaintiffs also bring claims under 42 U.S.C. § 1983 for substantive and due process violations. *Id.* Defendants move to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and

---

("Taking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment.").

[2]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

12(b)(6). R. 18, Mot. Dismiss. For the following reasons, Defendants' motion is granted.

## Background

Governor Pritzker, in response to the COVID-19 pandemic, issued an emergency proclamation and a series of executive orders in the spring of 2020. Specifically, on March 9, 2020, Governor Pritzker, acting under the authority granted to him by the Illinois Emergency Management Agency Act (20 ILCS 3305/1 *et seq*.), issued a disaster proclamation for the State of Illinois. Am. Compl. ¶ 28.[3] On March 20, 2020, Governor Pritzker issued Executive Order 2020-10 (the March 20 Executive Order) *Id.* ¶ 29. The March 20 Executive Order, among other things, ordered citizens to stay at home at their place of residence and limited travel within the State. *Id.* ¶ 30.

On April 1, 2020, Governor Pritzker issued a second Executive Order (No. 2020-18) (the April 1 Executive Order). Am. Comp. ¶ 31. The April 1 Executive Order extended the duration of the March 20 Executive Order to April 30, 2020. *Id.* On April 30, 2020, Governor Pritzker issued a third Executive Order (No. 2020-32) (the April 30 Executive Order) which extended the duration of the April 1 Executive Order to May 30, 2020. *Id.* ¶ 32.[4] Governor Pritzker ordered all non-essential businesses to close, prohibited individuals from travel across the State, except essential travel, and

---

[3]The Court accepts as true all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

[4]The March 20 Executive Order, the April 1 Executive Order, and the April 30 Executive Order are collectively referred to as "the Executive Orders."

3

ordered residents to stay at home. *Id.* ¶ 33. The Executive Orders mandated that all non-essential businesses immediately cease operations at their physical locations, that their employees not work at these physical locations, and that these businesses remain closed indefinitely, and for so long as the Executive Orders are extended and in effect. *Id.* ¶ 36.

On May 13, 2020, Plaintiffs filed a class action complaint against Governor Pritzker and the State of Illinois. R.1, Compl. The complaint has been amended and the operative complaint contains four counts. Am. Compl.[5] Business Owner Plaintiffs bring three counts: Count I alleges a violation of the Takings Clause of the Fifth Amendment (*id.* ¶¶ 57– 70); Count II alleges a violation of Substantive Due Process under 42 U.S.C. § 1983 (*id.* ¶¶ 71– 79); and Count IV alleges a violation of Procedural Due Process under 42 U.S.C. § 1983 (*id.* ¶¶ 89–99). Individual Plaintiffs bring one count only, Count III alleging a violation of Substantive Due Process under 42 U.S.C. § 1983. *Id.* ¶¶ 80–88. In their global request for relief, Plaintiffs seek compensatory damages, declaratory relief, an injunction, and several other forms of relief. *Id.* at 19–20. Defendants move to dismiss Plaintiffs' amended complaint pursuant to Rules

---

[5]Plaintiffs' filings reveal a discrepancy of the exact identity of the plaintiffs to this action. The caption in the Amended Complaint remained the same as the one in the original Complaint, and identifies George Pearson, Steve Balich, Samantha L. Palya, Amanda Hamerman, and Michael Judge as the five Individual Plaintiffs. Compl.; Am. Compl. However, the allegations of the Amended Complaint reference George Pearson, Steve Balich, Samantha L. Palya, Amanda Hamerman, James Van Dam, Jeff Carpenter, and John Brown as the seven Individual Plaintiffs, and omit any reference to Michael Judge. Am. Compl. ¶¶ 20–26. Yet, Plaintiffs' Response only refers to the Individual Plaintiffs as the individuals identified in the case caption. R. 23, Resp. For the purposes of this Opinion, the Court considers all eight of these identified individuals as the Individual Plaintiffs.

4

12(b)(1) and 12(b)(6). Mot. Dismiss. For the reasons that follow, the Defendants' Rule 12(b)(6) motion is granted.

## Standard of Review

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Standing is an "essential component of Article III's case-or-controversy requirement," and the plaintiff "bears the burden of establishing standing . . . in the same way as any other matter on which the plaintiff bears the burden of proof . . . ." *Apex Digital, Inc. v. Sears Roebuck & Co.,* 572 F.3d 440, 443 (7th Cir. 2009). In order to survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's *allegations* as to jurisdiction are inadequate—"the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). But district courts may also "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether *in fact* subject matter jurisdiction exists." *Taylor*, 875 F.3d at 853 (citing *Apex Digital*, 572 F.3d at 444). In that case, "no presumptive truthfulness attaches to plaintiff's allegations," and the court is "free to weigh the evidence and satisfy itself as to the

existence of its power to hear the case." *Apex Digital*, 572 F.3d at 444 (internal citations omitted).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

Defendants advance four primary arguments in support of their motion to dismiss. First, Defendants argue that the Eleventh Amendment bars all claims for damages and equitable relief against the State and Governor Pritzker in his official capacity. Mot. Dismiss at 2. Second, Defendants contend that the Court lacks subject matter jurisdiction over Plaintiffs' request for prospective injunctive relief. *Id*. Third, Defendants assert that Plaintiffs cannot state a viable claim under the Takings

6

Clause because the Governor's actions did not constitute a taking under the United States or Illinois Constitutions. *Id.* Finally, they argue that Plaintiffs fail to state a claim for violation of Plaintiffs' substantive or procedural due process rights. *Id.* The Court evaluates Plaintiffs' claims based on the nature of their requested relief.

## I. Monetary Relief

Plaintiffs seek monetary damages for their lost revenue, profits, and costs. Am. Compl. at 19, ¶¶ 1–3. Defendants first contend that Plaintiffs cannot bring a Section 1983 claim for damages against the State or Governor Pritzker for acting in his official capacity as neither Governor Pritzker nor the State of Illinois is a "person" subject to suit under Section 1983 for damages. R. 19, Memo. Dismiss at 6 (citing *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 49 n.24 (1997); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kolton v. Frerichs*, 869 F.3d 532, 535–36 (7th Cir. 2017)). The Court agrees.

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. CONST. amend XI. "The Eleventh Amendment deprives federal courts jurisdiction to consider most suits against states. State agencies and officials sued in their official capacities are 'the state' for Eleventh Amendment purposes." *Olison v. Governor Ryan*, 2000 WL 1263597, at *4 (N.D. Ill. Sept. 5, 2000) (citing *Will*, 491 U.S. at 70; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)); *see also Ind. Prot. and Advoc. Servs. v. Ind. Fam. and Soc. Servs. Admin.*, 603

7

F.3d 365, 370 (7th. Cir. 2010) ("If properly raised, the amendment bars actions in federal court against a state, state agencies, or state officials acting in their official capacities.") (internal citations omitted). Furthermore, "state agencies and officials in their official capacity cannot be sued under Section 1983 for damages." *Olison*, 2000 WL 1263597, at *4 (internal citations omitted); *see also Will*, 491 U.S. at 71 ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity.").

Plaintiffs do not challenge the above-referenced case law regarding Section 1983 or the Eleventh Amendment, but instead insist that their suit is not one for damages, but rather, one seeking to compel the State to award just compensation.[6] Resp. at 7. Plaintiffs' construction of their claims as constitutional violations does not obscure that which is plain: this lawsuit seeks monetary damages from the State's treasury for Plaintiffs' alleged financial losses occasioned by Governor Pritzker's

---

[6]Plaintiffs' Response fails to cite to *any* case law in support of their arguments. While Plaintiffs mention a case known as the "*Cedar Rust* case" they fail to provide a citation for that case and do not demonstrate how that case supports their arguments. Resp. at 3. Accordingly, Defendants invite the Court to deem Plaintiffs' arguments forfeited, and the Court agrees. R. 26, Reply at 2 (citing *Alioto v. Town of Lisbon*, 651 F.3d. 715, 721 (7th Cir. 2011)); *see also Pelfrense v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. We will not do his research for him.") (internal citations omitted). Of course, this does not mean that the Court accepts Defendants' arguments with no critical analysis—in this Opinion the Court evaluates the bases for dismissal presented to ensure they are plausible. *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("If [judges] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.").

Executive Orders. The Eleventh Amendment, however, bars such suits. Therefore, the Court grants Defendants' motion and dismisses those claims.

## II. Injunctive Relief

Plaintiffs, in addition to seeking monetary damages, also seek an order "enjoining Governor Pritzker from enforcing his Executive Orders until such time as a mechanism is enacted to provide just compensation for affected businesses and appellate review." Am. Compl. at 19, ¶ 5. Defendants again move to dismiss Plaintiffs' claim for injunctive relief on the basis that such relief is also barred by the Eleventh Amendment. Defendants also argue that, to the extent Plaintiffs seek prospective relief, their claims based on expired Executive Orders are moot. The Court reviews the mootness argument first, as it relates to the Court's subject matter jurisdiction.

### A. Mootness

If in fact Plaintiffs are seeking injunctive relief to prevent future harm—rather than monetary damages—in that they request that this Court prohibit "Governor Pritzker from enforcing his Executive Orders" (Am. Compl. at 19 ¶ 5), the Court agrees with Defendants that Plaintiffs' claim is moot (Mot. Dismiss at 9–10). Federal courts are limited to deciding justiciable cases or controversies under Article III, and therefore lack jurisdiction to hear non-justiciable cases, including cases that are moot. *See Maher v. F.D.I.C.*, 441 F.3d 522, 525 (7th Cir. 2006). A case is rendered moot "if there is no possible relief which the court could order that would benefit the party seeking it." *Id.* (internal citations omitted). Mootness has been described as "the doctrine of standing set in a time frame," because if a plaintiff loses standing during

9

the course of litigation, that plaintiff's claim is rendered moot. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980). In other words, "[a] case is moot when it no longer presents a live case or controversy." *Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 528 (7th Cir. 2001).

The last Executive Order with which Plaintiff takes issue expired as of May 30, 2020. Am. Compl. ¶ 32. And the Supreme Court has long held that a change to a challenged law (including termination of said law) renders a claim for respective relief relating to that law to be moot. *See Green v. Mansour*, 474 U.S. 64, 67 (1985); *Loc. No. 8-6, Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Missouri*, 361 U.S. 363, 367 (1960). Because the challenged Executive Orders are no longer in effect, any claim for prospective relief is moot.

But it is true that federal courts may consider otherwise moot cases or controversies if the questions involved are "capable of repetition, yet evading review[.]" *Moore v. Ogilvie*, 394 U.S. 814, 816 (1969). This exception to the mootness doctrine applies when "(1) the challenged action is too short in duration to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Tobin for Governor*, 268 F.3d at 529. The Seventh Circuit has recognized that "the capable-of-repetition doctrine applies only in exceptional situations, and generally only where

10

the . . . plaintiff can make a reasonable showing that he will again be subject to the alleged illegality." *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995).

Plaintiffs contend that their claims are not moot because even after the April 30 Executive Order expired, businesses were again closed on a county-by-county basis, and that Governor Pritzker's Order "did not terminate, was not revoked, and provides for application in the future should certain statistical reports again rise above an arbitrary number." Resp. at 7–8. However, as noted above, Plaintiffs again cite to no authority in support of their arguments, and point to no allegations in the Amended Complaint or facts in other documents of which the Court could take judicial notice,[7] that constitute a "reasonable showing" that they will again be subject to an allegedly illegal Executive Order.[8] Therefore, any claim for prospective relief does not fall under the "capable-of-repetition" exception to mootness, and Plaintiffs' claim for prospective injunctive relief must be dismissed for lack of subject matter jurisdiction.

## B. Eleventh Amendment Immunity

If, though, as Defendants suggest, Plaintiffs' claim for injunctive relief is in fact a claim for monetary damages, that claim is also barred by the Eleventh

---

[7]In fact, the State of Illinois's Coronavirus Response webpage states that due to the "continued decline in the rate of infection in new COVID-19 cases," more businesses, including restaurants, can begin opening. *See Phrase 4: Revitalization*, STATE OF ILLINOIS CORONAVIRUS RESPONSE, https://coronavirus.illinois.gov/s/restore-illinois-phase-4 (last visited Mar. 22, 2021).

[8]The Court agrees with Defendants that to the extent Plaintiffs seek injunctive relief relating to a future executive order, such a claim is not ripe and also must be dismissed under Federal Rule of Civil Procedure 12(b)(1). Mot. Dismiss at 9–10 (citing *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).

Amendment. *See generally Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720 (2007) (finding that the plaintiff sought damages in her complaint "which is sufficient to preserve our ability to consider the question").

There are three, limited exceptions to the Eleventh Amendment bar against suits against states. The first is consent—that is, a state may waive immunity and agree to suit in federal court. *Ind. Prot. and Advoc. Servs.*, 603 F.3d at 371. The second is abrogation of the state's immunity by a valid exercise of Congress' powers. *Id.* Plaintiffs do not assert either the first or second exceptions. The third is the doctrine articulated by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908), which "allows private parties to sue individual state officials for *prospective* relief to enjoin ongoing violations of federal law." *Council 31 of the Am. Fed'n of State, Cnty. and Mun. Emps. v. Quinn*, 680 F.3d 875, 882 (7th Cir. 2012) (emphasis added) (internal citations omitted). The rationale underlying this doctrine, known as the *Ex parte Young* doctrine, is as follows: "Because an unconstitutional legislative enactment is void, a state official who enforces that law comes into conflict with the superior authority of the Constitution, and therefore is stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Id.* (internal citations and quotations omitted)). Plaintiffs do not address this exception in their Response, but the Court explains why it does not apply.

"Courts conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks federal relief properly characterized as prospective." *Love v. Ill. Dep't of Corr.*, 2020 WL 1237200, at *4 (N.D. Ill. Mar. 13,

2020) (quoting *Verizon Md., Inc., v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). "An injunction is a forward-facing form of relief. It applies to ongoing or imminent harm." *Id.* While "[d]amages can look back," injunctive relief must "look to the present, or look forward." *Id.* Accordingly, to fall under the *Ex parte Young* doctrine, a plaintiff must seek prospective relief. *See Eason v. Pritzker*, 2020 WL 6781794, at *7–8 (N.D. Ill. Nov. 18, 2020).

It is on this distinction that Plaintiffs' claim ultimately fails. On the face of the Amended Complaint, Plaintiffs do not seek to restrain Governor Pritzker from any ongoing unconstitutional conduct. *Cf. Verizon Md.*, 535 U.S. at 645 (prayer for relief that "state officials be restrained from enforcing an order in contravention of controlling federal law[] clearly satisfies our straightforward [*Ex parte Young*] inquiry"). In *Papasan v. Allain*, 478 U.S. 265, 277–78 (1986), the Supreme Court explained the applicability of *Ex parte Young* as it relates to this issue specifically:

> *Young*'s applicability has been tailored to conform as precisely as possible to those specific situations in which it is necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States. Consequently, *Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation. As we have noted: Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment.

(internal citations and quotations omitted). Plaintiffs seek to recoup money from the State based on Governor Pritzker's alleged violation of federal law that occurred over

13

a period of time in the past, and the *Ex parte Young* doctrine was not designed to award Plaintiffs such requested compensation. On this basis, the *Ex parte Young* doctrine does not except Plaintiff's claim for injunctive relief from Eleventh Amendment sovereign immunity.

Moreover, Plaintiffs do not seek prospective relief, which delivers another defeat to the applicability of the *Ex parte Young* doctrine. The Amended Complaint, which was filed after the expiration of the April 30 Executive Order, focuses on past Executive Orders and alleges that Business Owner Plaintiffs were harmed financially by said orders and seek "just compensation" for this allegedly unconstitutional conduct. *See generally* Am. Compl. As Defendants correctly point out, Plaintiffs only challenge the March 20 Executive Order, the April 1 Executive Order, and the April 30 Executive Order, the last of which expired on or around May 29, 2020. Memo. Dismiss. at 9. Put simply, Business Owner Plaintiffs do not seek prospective injunctive relief. Individual Plaintiffs, to the extent they are seeking injunctive relief based on just compensation, fare no better, as Pearson and Balich asserted that they were engaged in political fundraising on behalf of candidates who were running for office in the November 2020 election cycle. Am. Compl. ¶¶ 20–21. Clearly, that has passed. Regardless, though, Individual Plaintiffs do not assert that they seek any prospective relief based on expired Executive Orders. What Plaintiffs really seek are damages for their alleged harm occasioned by Governor Pritzker's Executive Orders. As discussed above, the Eleventh Amendment, however, bars Plaintiffs' claims. The

14

Court finds that *Council 31*, 680 F.3d 875 (7th Cir. 2012) and *McDonough Assocs., Inc., v. Grunloh*, 722 F.3d 1043 (7th Cir. 2013) provide further guidance.

In *Council 31*, the plaintiff, a union representing state employees, sued the governor and another state official in their official capacity to challenge the state's pay freeze, which the plaintiff claimed violated the Contracts Clause and Equal Protection Clause of the U.S. Constitution by repudiating its collective bargaining agreement. 680 F.3d at 878–80. The plaintiff requested injunctive relief to prevent enforcement of the pay freeze, arguing that that its request fell under the *Ex Parte Young* doctrine. *Id.* at 883. The Seventh Circuit disagreed, observing that the plaintiff's argument "ignores our holding that the eleventh amendment bars a claim for injunctive relief that would require direct payments by the state from its treasury for the indirect benefit of a specific entity." *Id.* at 884 (internal quotations and citations omitted). The Seventh Circuit made this finding even though the plaintiff's request for injunctive relief did not specifically require the court to direct payment of funds out of the state's treasury; because the "essence of the relief sought" constituted such a payment, it did not constitute prospective relief and was barred by the Eleventh Amendment. *Id.* at 882–84.

The Seventh Circuit reaffirmed this principle a year later in *McDonough*. In that case, the plaintiff, an architecture and engineering firm, alleged that the Illinois Department of Transportation (IDOT) owed it approximately $2 million dollars for work it performed for IDOT. 722 F.3d at 1045–46. The plaintiff claimed that it was facing bankruptcy and collapse if it did not receive the payments it alleged were due

15

from the state. *Id.* at 1045. It filed suit in federal court against IDOT officials asserting a violation of the Due Process Clause of the Fourteenth Amendment. *Id.* The District Court granted the plaintiff a temporary restraining order requiring state officials to execute certain supplemental agreements with the plaintiff so that the plaintiff could be paid for its past work. *Id.* at 1047. While complying with the temporary restraining order, the defendants moved the District Court to dissolve or decline to extend the temporary restraining order, arguing that it was a claim for monetary damages against the State of Illinois and therefore barred by the Eleventh Amendment. *Id.* The District Court denied their request, holding that the relief granted fell under the *Ex parte Young* doctrine as an exception to sovereign immunity. *Id.* at 1047–48. The Seventh Circuit reversed, observing that although it is permissible under *Ex Parte Young* to "order state officials to act in a certain manner going forward that may cost the state money to implement," courts "may not . . . direct a state to make payments to resolve a private debt or *to make remedy a past injury to a private party.*" *Id.* at 1050–51 (emphasis added). The Seventh Circuit explained that although the plaintiff had cloaked its claim in the language of federal due process, its suit remained "in substance an effort to have a federal court order state officials to make payments from the state treasury to remedy past alleged breaches of contract." *Id.* at 1045. The Seventh Circuit was not persuaded by the plaintiff's creative styling of its claim. *Id.* at 1052. Neither is the Court in this case.

The essence of Plaintiffs' requested injunctive relief is money from the State of Illinois. While Plaintiffs, like the plaintiff in *McDonough*, attempt to cloak their

16

dispute as one involving the Takings Clause and Due Process Clause of the United States Constitution, once stripped of this garb, it is clear that what Plaintiffs really seek is to recoup from the State of Illinois money they allegedly lost due to the Executive Orders. Notably, again, Plaintiffs' Response fails to address, much less distinguish, the numerous cases cited by Defendants and fails to develop any cogent arguments in opposition to Defendants' motion. The Court grants Defendants' motion to dismiss is it relates to Plaintiffs' claims seeking injunctive relief.

### III. Declaratory Relief

Plaintiffs also request a declaratory judgment "that issuance and enforcement of Governor Pritzker's Executive Orders is an unconstitutional taking without just compensation and a violation of the Due Process Clause of the Fourteenth Amendment." Am. Comp. at 19, ¶ 4. Even though the Court has denied injunctive relief to Plaintiffs, it can still review Plaintiff's claims relating to declaratory relief. *See Green*, 474 U.S. at 72 ("[D]eclaratory relief may be available even though an injunction is not."). Yet, this request does not save Plaintiffs' claims, as Plaintiffs still cannot overcome the Eleventh Amendment. Defendants correctly point out that Plaintiffs' declaratory request, if granted, would force the State to pay compensation from the State's treasury for past wrong. Memo. Dismiss at 8. To the extent Plaintiffs seek prospective relief (Resp. at 7), such relief would result in payment of just compensation and compensatory damages to Plaintiffs. *Id.* at 9. The Seventh Circuit has held that "declaratory 'relief should not be awarded where the eleventh amendment bars an award of monetary or injunctive relief; otherwise the

17

[declaratory] relief would operate as means of avoiding the amendment's bar.'" *Council 31*, 680 F.3d at 883 (7th Cir. 2012) (quoting *MSA Realty Corp. v. Ill.*, 990 F.2d 288, 295 (7th Cir. 1993)). Again, Plaintiffs fail to address Defendants' arguments or this incontrovertible legal authority in their Response.

The Court again finds that the Eleventh Amendment bars Plaintiffs' claim for declaratory relief. Therefore, the Court grants Defendants' motion as to this claim, and dismisses this claim. The Court need not address Defendants' remaining arguments.

## Conclusion

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss [18]. Plaintiffs' claims relating to prospective injunctive relief are dismissed under Rule 12(b)(1) as moot. The Eleventh Amendment bars the remainder of Plaintiffs' claims, which are dismissed under Rule 12(b)(6). Since Plaintiffs do not request leave to file an amended complaint in their Response and the Court finds no basis to amend Plaintiffs' claims, as such attempts appear to be futile based on the Eleventh Amendment, the Court dismisses Plaintiffs' Amended Complaint [9] with prejudice. This civil case is terminated.

Dated: March 24, 2021

                                                              United States District Judge
                                                              Franklin U. Valderrama